SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State of New Jersey v. Demetrius C. Cope** (A-13-14) (074206)

**Argued November 9, 2015 – April 25, 2016**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court considers: (1) the circumstances under which contraband, discovered by police in the context of a protective sweep conducted incident to arrest, is subject to suppression; and (2) when a trial court may preclude the introduction of third-party-guilt testimony.

In October 2006, defendant was charged with second-degree possession of a weapon by a person previously convicted of a crime.  Defendant moved to suppress the rifle, claiming that its seizure violated his right to be free from unreasonable searches and seizures.  In April 2011, the trial court conducted a suppression hearing at which the State called the only witness, Sergeant David Brintzinghoffer.  He testified that on July 5, 2006, at approximately 6:20 p.m., he and five other police officers went to defendant's apartment to execute a warrant for his arrest.  Sergeant Brintzinghoffer knew that defendant had a number of prior convictions and had information that he might be armed.

Defendant resided in a second-floor apartment with a back porch adjacent to its living room.  Three officers positioned themselves behind the building, while Sergeant Brintzinghoffer and two other officers knocked on the front door.  After knocking, the sergeant heard a commotion inside the apartment.  He announced that he had a warrant, and seconds later, an officer guarding the rear called out that defendant had run into the apartment from the back porch.  The sergeant banged on the front door, after which a female voice responded, "Hold on."  The sergeant stated that he had an arrest warrant and that he would kick in the door unless defendant answered.

April Grant, defendant's adult daughter, opened the door.  Sergeant Brintzinghoffer and another officer climbed the stairs, walked into the living room, and arrested defendant.  Sergeant Brintzinghoffer conducted a protective sweep of the bedroom, bathroom, and back porch to ensure that no one could launch a surprise attack.  When he stepped onto the porch, he saw a bag on the floor next to a storage bin in which he feared someone might be hiding.  He picked up the bag and knew by its weight and feel that a rifle was inside.  He opened the bag and found an assault-type rifle, a banana clip, and numerous rounds of ammunition.  The bag and its contents were seized as evidence.  The trial court found the sergeant credible and denied defendant's motion to suppress on the basis that he conducted a permissive protective sweep, during which he discovered the rifle.

At trial, the State called several police officers, including Sergeant Brintzinghoffer, as witnesses.  Officer Christopher Ent, a member of the team guarding the rear of the apartment, recalled seeing the porch's sliding glass door open, its screen door come crashing down, and defendant step onto the porch.  In his defense, defendant claimed that someone else placed the rifle on his porch without his knowledge.  Defendant's daughter testified that the balcony was cluttered and that defendant used it to store his tools there.  Defendant testified that he owned a home-improvement business that employed ex-felons.  He explained that he wanted to give others with a criminal record an opportunity for gainful employment.  He said his employees had access to his apartment, stored work gear and tools there, and recalled workers loading tools from his balcony on July 5, 2006, the day of his arrest.  Defendant intended to call Dante Santiago, his former employee, to testify that he owned the rifle and placed it on the porch.  According to a notarized statement by Santiago, he stashed the rifle on the porch and planned to sell it.  When Santiago returned to retrieve the rifle, police were at the property and, as a result, he considered the rifle a loss.

After jury selection, the court conducted a Rule 104 hearing to determine whether Santiago would invoke his Fifth Amendment right to remain silent, given the self-incriminating nature of his expected testimony.  Under oath, Santiago stated that he did not need a lawyer and that he would not invoke his right to remain silent.  The court conducted a second Rule 104 hearing at the conclusion of the State's case to determine the admissibility of Santiago's notarized statement and his expected testimony.  The court reviewed Santiago's judgment of conviction and jail records, showing that he was incarcerated in a county jail from June 22, 2006 until August 30, 2006.  The court also reviewed his prior statements, including one given to detectives on May 3, 2011, the day before defendant's trial began.  That day, detectives questioned Santiago about his earlier notarized statement.  They showed him a document indicating that he was incarcerated from May 16, 2006 through November 16, 2006.  They asked, "if you dropped the gun off, it had to be before May, right?"  Santiago responded that he was not "sure of the date exactly," reminding the detectives that the events occurred five years earlier.  Santiago pointed out that he must have left the rifle in defendant's apartment before his incarceration, stating, "I had to have left it there before that, right" and "It's impossible for me to be in two places at one time right?"  Ultimately, the court barred the admission of Santiago's notarized statement, and his expected testimony, on the basis the account was factually impossible.  The jury convicted defendant of possession of a weapon by a person previously convicted of a crime.  The court sentenced defendant to twelve years' imprisonment, subject to

six years of parole ineligibility, and imposed the applicable fines and penalties.

Defendant appealed. In an unpublished decision, the Appellate Division held that the trial court erred when it denied the motion to suppress the rifle and the contents of the rifle bag and when it barred defendant from presenting evidence of third-party guilt. The panel reversed defendant's conviction and remanded for a new trial. The Court granted the State's petition for certification. 220 N.J. 40 (2014).

**HELD**: 1) After arresting defendant in his living room, the police conducted a protective sweep of an adjoining porch to ensure no individuals posing a safety risk were on the premises. The sweep did not violate constitutional standards and the trial court properly denied the motion to suppress the rifle. 2) The trial court abused its discretion when it denied defendant the right to present a full third-party-guilt defense. A witness whose testimony is central to a defense of third-party guilt cannot be kept off the stand unless the expected version of events is so patently false that the events could not have occurred.

1. A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. The permissible scope of a protective sweep incident to a home arrest depends on the radius of danger facing the officers. They may look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched without probable cause or reasonable suspicion. The sweep must be narrowly confined to a cursory visual inspection of those places in which a person might be hiding. The sweep should last no longer than is necessary to dispel the reasonable suspicion of danger or to complete the arrest and depart the premises. (pp. 16-20)

2. Here, police executed the arrest warrant for defendant while he was in his apartment. No one responded immediately to the officers' knocks. The sergeant heard a commotion, which made him believe that multiple people were inside. Once inside, the sergeant conducted a protective sweep. When the sergeant stepped onto the porch, he instantly observed the rifle bag and, given defendant's prior convictions, knew that defendant was barred from possessing a firearm. The porch was in such close proximity to the place of arrest that a protective sweep of that area was permissible, even without probable cause or reasonable suspicion. The sweep was limited to a brief visual inspection of an area from which a person might have emerged to surprise and threaten the officers. The sweep was swift and did not exceed the time necessary to dispel the reasonable suspicion of danger. The seizure of the rifle bag and its contents met the plain-view exception to the warrant requirement. The trial court's finding that the protective sweep was reasonable is supported by sufficient credible evidence in the record. (pp. 20-24)

3. The Compulsory Process Clause in the federal and state constitutions gives the accused in a criminal prosecution the right to call witnesses in his favor. A defendant does not bear the burden of proving his innocence, but has the right to introduce evidence that someone else committed the crime for the purpose of raising reasonable doubt. Third-party guilt evidence need only be capable of raising a reasonable doubt of defendant's guilt to warrant its admissibility. A court cannot bar the admissibility of third-party-guilt evidence that has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case. (pp. 24-26)

4. Here, Santiago provided a notarized statement that he brought a gun into defendant's apartment, without defendant's knowledge, on his third day working for defendant. He planned to retrieve the gun and sell it, but was thwarted when he approached the apartment and observed police "running down on the place." The trial court apparently determined that the third day of Santiago's work corresponded with the day of defendant's arrest because of Santiago's observation of "police running down on the place" -- presumably referring to the apartment. On July 5, 2006, the day of defendant's arrest, Santiago was incarcerated. Having assumed that Santiago was actually in jail on the day of defendant's arrest, the court concluded that Santiago could not have placed the rifle on the balcony as he claimed. The error in the court's reasoning is the assumption that the only day the police may have been in the area of defendant's apartment was July 5, 2006. The record does not contain irrefutable evidence to support that assumption. However implausible Santiago's account may have seemed, the credibility of Santiago's notarized statement and expected testimony was for the jury to resolve. While the trial court retains broad discretion in determining the admissibility of evidence, that discretion is abused when relevant evidence offered by the defense and necessary for a fair trial is kept from the jury. A person who confesses to the crime of which the defendant is accused should not be barred from testifying unless the claim is so patently false that it was impossible for him to have committed the crime. (pp. 26-31)

The judgment of the Appellate Division is **AFFIRMED IN PART** and **REVERSED IN PART**. The matter is **REMANDED** to the trial court for proceedings consistent with this opinion. On retrial, the version of N.J.R.E. 609 now in effect governs the admissibility of defendant's prior convictions.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN'S opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

        v.

DEMETRIUS C. COPE (a/k/a
RAASHID HABSHIN, RASHEED
COPE, DEMETRIUS M. COPE, and
DEMETRIAS COPE),

    Defendant-Respondent.

Argued November 9, 2015 – Decided April 25, 2016

On certification to the Superior Court,
Appellate Division.

Jane C. Schuster, Deputy Attorney General,
argued the cause for appellant (John J.
Hoffman, Acting Attorney General of New
Jersey, attorney).

Theresa Yvette Kyles, Assistant Deputy
Public Defender, argued the cause for
respondent (Joseph E. Krakora, Public
Defender, attorney; Ms. Kyles and John V.
Saykanic, Designated Counsel, on the
briefs).

    JUSTICE ALBIN delivered the opinion of the Court.

    Defendant Demetrius C. Cope was convicted by a jury of second-degree possession of a weapon by a person previously convicted of a crime, N.J.S.A. 2C:39-7(b).

In this appeal, we must determine whether the trial court properly denied defendant's motion to suppress a rifle discovered during a protective sweep of his apartment immediately following his arrest in his living room. The court rejected defendant's claim that the limited search exceeded constitutional limits. We must also determine whether the trial court denied defendant his right to present a defense of third-party guilt by barring the testimony of a witness who took responsibility for placing the rifle in defendant's apartment. The court precluded the third-party-guilt testimony because it believed that the witness's account was factually impossible.

The Appellate Division reversed defendant's conviction. The appellate panel concluded that the rifle should have been suppressed because the police did not have a reasonable and articulable suspicion of danger that justified the protective sweep. The panel also found that the trial court improperly denied defendant the right to advance a third-party-guilt defense.

We agree with the Appellate Division that defendant's conviction must be reversed because defendant was denied the right to present a full third-party-guilt defense. The witness's account of having placed the rifle in defendant's apartment was not factually impossible, however implausible it may have seemed to the trial court. The final arbiter of the

2

witness's credibility should have been the jury, not the court. A witness whose testimony is central to a defense of third-party guilt cannot be kept off the stand unless the expected version of events is so patently false that the events could not possibly have occurred. That exceedingly high standard was not met here, and therefore it was for the jury to determine the ultimate reliability of the witness's testimony.

We disagree, however, with the Appellate Division's conclusion that the trial court erred in not suppressing the rifle. After arresting defendant in his living room, the police conducted a protective sweep of an adjoining porch to ensure that no individuals posing a safety risk were on the premises. The protective sweep did not violate constitutional standards.

We remand to the trial court for proceedings consistent with this opinion.

I.

A.

In October 2006, defendant was indicted on the charge of second-degree possession of a weapon by a person previously convicted of a crime, N.J.S.A. 2C:39-7(b).[1] The charge arose

---

[1] In the same indictment, defendant was charged with third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(f); fourth-degree prohibited weapons and devices, N.J.S.A. 2C:39-3(j); and third-degree receiving stolen property, N.J.S.A. 2C:20-7(a). These charges were not submitted to the jury and, apparently, were dismissed before trial.

from the discovery of an assault-type rifle in defendant's apartment when police took defendant into custody on an unrelated arrest warrant.

Defendant moved to suppress the rifle, claiming that the seizure of the rifle by the police violated his federal and state constitutional rights to be free from unreasonable searches and seizures. In April 2011, the trial court conducted a suppression hearing. The State called the only witness to testify at the hearing, Burlington Township Police Sergeant David Brintzinghoffer. The factual record of the suppression hearing is based primarily on the officer's testimony.

B.

On July 5, 2006, at approximately 6:20 p.m., Sergeant Brintzinghoffer, along with five other police officers, went to defendant's unit at the Chateau Apartment complex in Burlington Township to execute a warrant for his arrest. Sergeant Brintzinghoffer knew that defendant had a number of prior criminal convictions and had information that he "[m]ight be armed" with a weapon.[2]

---

[2] Defendant's convictions included two for third-degree possession of controlled dangerous substances with the intent to distribute within 1000 feet of school property, one for third-degree eluding, one for possession of a weapon for an unlawful purpose, and one for fourth-degree resisting arrest. The information concerning defendant possibly being armed came from a law enforcement officer.

Defendant resided in a second-floor apartment that has a back porch adjacent to the unit's living room. The apartment is accessed by a door on the first floor. Three officers positioned themselves behind the building, allowing them to observe defendant's back porch, while Sergeant Brintzinghoffer and two other officers knocked on the front door. After knocking, Sergeant Brintzinghoffer heard what sounded like a "commotion" -- the movement of something and "multiple people inside the apartment." The sergeant announced that he had a warrant, and seconds later an officer guarding the rear called out that defendant had run into the apartment from the back porch. Sergeant Brintzinghoffer then banged on the door. A female voice responded, "[H]old on." The sergeant stated that he had an arrest warrant for defendant and that the door would be kicked in unless defendant answered.

April Grant, defendant's adult daughter, opened the door, and Sergeant Brintzinghoffer and one other officer climbed the stairs, which opened into the apartment's living room. There, the officers found defendant lying on a couch. Defendant was handcuffed and placed under arrest.

Sergeant Brintzinghoffer then conducted a protective sweep of the bedroom, bathroom, and back porch to ensure that no one could launch a surprise attack against the officers. A sliding glass door separating the living room from the porch was open.

5

When Sergeant Brintzinghoffer stepped onto the porch, he observed a camouflage rifle bag on the floor next to a storage bin in which he feared someone might be hiding. He picked up the bag and knew by its weight and feel that a rifle was inside. He opened the bag and found an assault-type rifle, a "banana clip," and "numerous rounds of ammunition, other magazines, [and] speed loaders." The rifle and contents of the bag were seized as evidence.

The trial court determined that Sergeant Brintzinghoffer was a credible witness and denied defendant's motion to suppress on the basis that the sergeant conducted a permissible protective sweep during which he discovered, in plain view, the rifle and its accoutrements.

C.

During a four-day jury trial in May 2011, the State called several police officers as witnesses, including Sergeant Brintzinghoffer, whose testimony tracked the account he gave at the suppression hearing. Burlington Township Police Officer Christopher Ent, who was part of the perimeter team guarding the rear of defendant's apartment during the execution of the arrest warrant, recalled seeing the back porch's sliding glass door open, its screen door come crashing down, and defendant step onto the porch.

Burlington Township Sergeant (then-officer) Richard Sullivan, who also was on the perimeter team, remembered the screen door falling and defendant coming onto the balcony.[3] After he and defendant made eye contact, Sullivan trained his rifle on defendant and ordered him back into the apartment. Defendant put his hands up and complied.

The State offered expert testimony that the assault-type rifle seized from defendant's apartment was operable and that no identifiable fingerprints were lifted from the weapon. Defendant and the State stipulated that "defendant has been convicted of a predicate prior offense."

Defendant asserted as his defense that, without his knowledge, someone put the rifle on his porch. In support of that defense, defendant called as a witness his adult daughter, April, then a college student, who was visiting her father when the police arrived. April testified that she did not see defendant go onto the balcony that day. She stated that the screen to the porch's sliding glass door fell when she opened it. She described the balcony as a cluttered area where defendant stored his tools and where junk had accumulated. She remembered that, on other occasions, her father's construction-business employees were present in the apartment. She also

---

[3] Balcony and porch were used interchangeably during the trial.

7

averred that she had never seen or heard her father talk about a rifle.

Testifying in his own defense, defendant stated that he owned a home-improvement construction company that employed ex-felons. He explained that, given his own past, he wanted to give others with a prior criminal record an opportunity for gainful employment. Defendant also stated that his employees had access to his apartment and stored work gear and tools inside. He recalled workers loading tools from his balcony on July 5, 2006, the day of his arrest.

Defendant maintained that in 2006 he was living in two separate residences, the unit at the Chateau Apartment complex and at the home of his then fiancée and now wife (April's mother). According to defendant, when the police arrived at his door, the television was playing, and he was leaning over the porch screen onto his balcony when the screen fell off its hinges. He became scared when he saw a "shotgun" pointing at him. Defendant denied ever owning or seeing the rifle or ammunition found on his balcony.

D.

Defendant intended to call as a witness Dante Santiago, a former employee of defendant's construction business, who claimed that he owned the rifle and placed it on the porch

8

unbeknownst to defendant.  In a notarized statement dated April 22, 2011, Santiago wrote:

> On my third day at work I not only brought an "SK" with me (gun), but without permission I also decided to stash it on the boss man's balcony until work was finished because I was going to sell it to an associate of mine that resides in North Camden.  Well what was suppose[d] to take place obviously didn't, because after work this day me and [my friend] headed back to boss man Cope's apartment so that we could receive payment for the day's work and so that I could also pick up my shit, but as we approached the apartment there was police running down on the place.  Why?  Beats the hell out of me, but what I did know was that I was going to have to chalk my "SK" (gun) up as a loss.

Santiago concluded his notarized statement by saying:  "I cannot allow for an innocent man to go to prison because of something that didn't even belong to him.  I . . . am taking full responsibility of my gun that was found at Mr. Cope's address."

After jury selection, at the prosecutor's request, the court conducted a <u>Rule</u> 104 hearing to determine whether Santiago would invoke the Fifth Amendment in the presence of the jury, given the self-incriminating nature of his expected testimony.[4] Under oath, Santiago stated that he "[did] not need a lawyer" and would not invoke his constitutional right to remain silent.

---

[4] <u>N.J.R.E.</u> 104(a) provides that "[w]hen the qualification of a person to be a witness, or the admissibility of evidence . . . is subject to a condition . . . that issue is to be determined by the judge."

9

He also averred that he would "tell . . . the truth" and "answer each and every question," including those concerning criminal charges pending against him. Based on those responses, the court concluded that Santiago would be permitted to testify.

At the prosecutor's urging, a second Rule 104 hearing was held at the close of the State's case, this time to determine the admissibility of Santiago's notarized statement and his expected testimony. The court reviewed Santiago's judgment of conviction and jail records showing that he was incarcerated in a county jail from June 22, 2006 until August 30, 2006. The court also reviewed his prior statements, including one given to detectives on May 3, 2011, the day before defendant's trial began.

On that day, detectives in the Burlington County Prosecutor's Office questioned Santiago about his earlier notarized statement. During the recorded questioning, the detectives showed Santiago a document indicating that he was incarcerated in the Camden County Jail from May 16, 2006 until November 16, 2006. The primary interrogator asked, "[I]f you dropped the gun off it had to be before May, right?" Santiago responded that he was not "sure of the date exactly," reminding the detective that the events occurred five years earlier. Santiago pointed out to the detective that he must have left the rifle in defendant's apartment before his incarceration,

stating, "I had to have left it there before that, right" and "It's impossible for me to be in two places at one time right?"

The prosecutor acknowledged to the court that Santiago was claiming that he dropped off the rifle before his incarceration. The court also took testimony from Santiago that did not shed much light on the precise day he claimed to have dropped off the rifle. Given the passage of time, Santiago testified that he did not remember the dates of his incarceration and admission into the Sheriff's Labor Assistance Program in 2006. He stated, "I don't want to state a date and it not be true and me be lying when I just raised my right hand."

At the end of the Rule 104 hearing, the court barred the admission of Santiago's notarized statement, offered as a declaration against interest, and his expected testimony on the basis that his account was factually impossible. The court determined that Santiago's prior statements indicated that he placed the rifle in defendant's apartment on July 5, 2006, the same day defendant was arrested -- a day when Santiago was incarcerated. In reaching that conclusion, the court stated, "There is no way that [Santiago] could have done what he said and been in jail at the same time and that's just an impossibility."

Accordingly, the court withheld from the jury Santiago's notarized statement and his testimony.

11

E.

The jury found defendant guilty of possession of a weapon by a person previously convicted of a crime. The trial court sentenced defendant to twelve years' imprisonment, with a six-year period of parole ineligibility, and imposed the applicable fines and penalties.

Defendant appealed.

II.

In an unpublished decision, the Appellate Division held that the trial court erred in not granting the motion to suppress the rifle and the contents of the rifle bag and in barring defendant from presenting evidence of third-party guilt through the testimony of Dante Santiago. Accordingly, the panel reversed defendant's conviction and remanded for a new trial.

On the suppression issue, the panel determined that Sergeant Brintzinghoffer did not have a legitimate basis, under either the Federal or State Constitution, to conduct a protective sweep of the back porch of defendant's apartment. The panel relied on State v. Davila, 203 N.J. 97, 102 (2010), for the proposition that a protective sweep is permissible if the police were lawfully on the premises and had "a reasonable articulable suspicion that the area to be swept harbors an individual posing a danger." It found that "[t]he police were lawfully within defendant's home pursuant to the arrest

12

warrant," but that the protective sweep "was not supported by any 'reasonable, articulable suspicion'" that a "dangerous individual" was lurking on the back porch. The panel reached that finding because, based on the police surveillance, no one other than defendant appeared on the porch from the time the police arrived until defendant's arrest. The panel also noted that Sergeant Brintzinghoffer "did not see or hear anything that led him to believe a person was hiding on the back porch balcony." According to the panel, in the absence of an articulable suspicion to conduct a protective sweep of the balcony, Sergeant Brintzinghoffer's "only lawful choice was to secure the premises and apply for a search warrant or simply leave," citing State v. Johnson, 193 N.J. 528, 555-56 (2008).

The Appellate Division also concluded that the trial court violated defendant's right to present witnesses, which is derived from the due-process and compulsory-process guarantees of the Federal and State Constitutions. The panel submitted that a defendant is entitled to offer evidence of third-party guilt as a defense. It reasoned that Santiago's account that he placed the rifle in defendant's apartment, "if believed by the jury, could have exonerated defendant." Questions concerning Santiago's whereabouts during the relevant time period, according to the panel, went to the witness's credibility and not to the admissibility of his testimony.

13

Last, in light of the need for a new trial, the panel did not address the trial court's ruling on the evidential use of defendant's prior convictions given that the admissibility of prior convictions would be governed by the amended version of Rule 609 at the retrial.

We granted the State's petition for certification. State v. Cope, 220 N.J. 40 (2014).

III.

A.

The State argues that, under Maryland v. Buie, 494 U.S. 325, 334, 110 S. Ct. 1093, 1098, 108 L. Ed. 2d 276, 286 (1990), the police had the right to conduct a warrantless protective sweep of defendant's back porch to safeguard against someone launching a surprise attack. The State submits that Sergeant Brintzinghoffer properly seized the rifle bag, which he observed in plain view while he was lawfully on the porch, because he knew that defendant could not legally possess a gun.

The State contends that Santiago's proposed testimony that he placed the rifle in defendant's apartment was "'impossible,' and not simply improbable" based on documentary evidence that he was incarcerated during the relevant time period. The State thus argues that the trial court did not abuse its discretion by barring the testimony of a "defense witness who planned to lie" and by precluding "the admission of Santiago's affidavit which

14

contained the same demonstrably false claims." The State submits that the trial court properly exercised its gatekeeping role by ensuring that the jury was not exposed to Santiago's perjured testimony and false claims.

Last, the State maintains that the court properly admitted defendant's prior convictions based on the evidence rule and case law then in effect.

B.

Defendant urges that we affirm the Appellate Division. He insists that, under Buie, the protective sweep of his back porch was not justified as a search incident to an arrest or as a search supported by a reasonable and articulable suspicion. According to defendant, the police had no reason to believe that individuals were hiding on the back porch based on the testimony of the officers on the perimeter detail and given Sergeant Brintzinghoffer's view of the porch from the living room.

Defendant also argues that the trial court violated his federal and state constitutional rights to present a defense of third-party guilt by barring Santiago from testifying that he placed the rifle in defendant's apartment. Defendant insists that Santiago consistently denied knowing the date on which he left the rifle at defendant's apartment and therefore his claim was not impossible -- that is, Santiago may have acted before his incarceration. Defendant maintains that the court should

15

not have precluded Santiago's testimony, but rather should have allowed his credibility to be tested by vigorous cross-examination.

Finally, defendant agrees with the Appellate Division that, on retrial, the trial court must apply the amended version of Rule 609.

IV.

We first address whether the protective sweep of defendant's apartment following his arrest in the living room conformed to the dictates of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution.

A.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against "unreasonable searches and seizures" by government officials.[5]  "Our constitutional jurisprudence expresses a

---

[5] The Fourth Amendment and Article I, Paragraph 7 use virtually identical language.  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

16

decided preference that government officials first secure a warrant before conducting a search of a home or a person." State v. Watts, 223 N.J. 503, 513 (2015) (citing State v. Edmonds, 211 N.J. 117, 129 (2012)). The police may conduct a warrantless search only if it falls within "one of the . . . well-delineated exceptions to the warrant requirement." Edmonds, supra, 211 N.J. at 130 (quoting State v. Frankel, 179 N.J. 586, 598, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004)). "The State bears the burden of proving by a preponderance of the evidence the validity of a warrantless search." Id. at 128 (citing State v. Wilson, 178 N.J. 7, 12-13 (2003)).

To justify the warrantless home search in this case, the State relies on the protective-sweep doctrine. A protective sweep of a home incident to a lawful arrest is a reasonable search under both the Fourth Amendment and Article I, Paragraph 7 of our State Constitution. Buie, supra, 494 U.S. at 327-28, 110 S. Ct. at 1094-95, 108 L. Ed. 2d at 281-82; Davila, supra, 203 N.J. at 113. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which

[U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7.]

17

a person might be hiding." Davila, supra, 203 N.J. at 113 (quoting Buie, supra, 494 U.S. at 327, 110 S. Ct. at 1094, 108 L. Ed. 2d at 281).

The rationale for the protective sweep is officer safety. See id. at 103. It is recognized that police officers who make an arrest in a home face a great "risk of danger" because they are "at the disadvantage of being on [their] adversary's 'turf.'" Buie, supra, 494 U.S. at 333, 110 S. Ct. at 1097-98, 108 L. Ed. 2d at 285. Officers making an in-home arrest have an interest in ensuring that the suspect "is not harboring other persons who are dangerous and who could unexpectedly launch an attack." Ibid. Additionally, an arrest in a home may trigger a potentially chaotic, volatile, and dangerous scene involving the suspect's immediate relatives or friends. See Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994) (finding qualified immunity for protective sweep incident to in-home arrest because situation was chaotic and occupants were aggressive towards officers). Officers have a right to take commonsense safety precautions that will lessen the potential dangers to which they are exposed while executing an arrest in a home. See Davila, supra, 203 N.J. at 115-16.

The permissible scope of a protective sweep incident to a home arrest depends on the radius of danger facing the officers. The officers may "look in closets and other spaces immediately

18

adjoining the place of arrest from which an attack could be immediately launched" without probable cause or reasonable suspicion. Buie, supra, 494 U.S. at 334, 110 S. Ct. at 1098, 108 L. Ed. 2d at 286. Any wider search, however, must be based on "articulable facts" and "rational inferences" drawn from those facts that "would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Ibid.

In Davila, supra, we approved of protective sweeps in cases involving in-home arrests as set forth in Buie and, more broadly, in non-arrest cases in which police officers are legitimately in a home and have a reasonable and articulable suspicion to believe that their safety is in danger. 203 N.J. at 116. Davila addressed the scenario in which the police secured admittance to a home on a potentially pretextual basis for the purpose of conducting a sweep of the premises. Id. at 101-03. That concern is not present in this case.

In summary, a protective sweep incident to an in-home arrest is permissible under the following circumstances. First, the police may sweep the "spaces immediately adjoining the place of arrest from which an attack" might be launched even in the absence of probable cause or reasonable suspicion. Buie, supra, 494 U.S. at 334, 110 S. Ct. at 1098, 108 L. Ed. 2d at 286. Any wider sweep must be justified by "specific facts that would

19

cause a reasonable officer to believe there is an individual within the premises who poses a danger" to the arresting officers. Davila, supra, 203 N.J. at 115. Second, the sweep must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Buie, supra, 494 U.S. at 327, 110 S. Ct. at 1094, 108 L. Ed. 2d at 281. Although the sweep "is not a search for weapons or contraband," such items may be seized if observed "in plain view" during the sweep. Davila, supra, 203 N.J. at 115. Last, the sweep should last "no longer than is necessary to dispel the reasonable suspicion of danger" or "to complete the arrest and depart the premises." Ibid. (quoting Buie, supra, 494 U.S. at 335-36, 110 S. Ct. at 1099, 108 L. Ed. 2d at 287).

We apply those principles to the facts of this case.

B.

The police executed the arrest warrant for defendant while he was present in his apartment. No one in the apartment responded immediately to the officers' door knocks, and Sergeant Brintzinghoffer heard a "commotion" and the movement of something. Based on the noise coming from the apartment, Sergeant Brintzinghoffer believed "multiple people [were] inside the apartment." The door to the apartment was opened by defendant's daughter only after Sergeant Brintzinghoffer announced that he had a warrant and threatened to kick in the

20

door.  The officers arrested defendant in his living room.

Sergeant Brintzinghoffer conducted a protective sweep of the

bedroom, bathroom, and back porch to prevent a surprise attack.

An open sliding glass door separated the living room from the

adjoining porch, where defendant was sighted by officers on the

perimeter detail immediately before his arrest.  When Sergeant

Brintzinghoffer stepped onto the porch, he instantly observed

the rifle bag.  He knew that defendant, based on his prior

convictions, was barred from possessing a firearm.  Upon picking

up the bag, by its weight and feel, he realized that a rifle was

inside.

Initially, we conclude that the porch was in such close

proximity to the place of arrest -- indeed, immediately

adjoining it -- that a protective sweep of that area was

permissible even without probable cause or reasonable suspicion.

See, e.g., Kerr v. Commonwealth, 400 S.W.3d 250, 267-68 (Ky.

2013) (stating that for protective-sweep purposes, bedroom was

"immediately adjoining" place of arrest, which occurred several

feet down hallway in another room); State v. Murdock, 455 N.W.2d

618, 620 (Wis. 1990) (stating that for protective-sweep

purposes, room where defendant was arrested was "immediately

adjoining" pantry connected to that room).  Even so, given all

of the information available to Sergeant Brintzinghoffer, he

would have been justified entering the porch based on the

reasonable-and-articulable-suspicion standard.  See United States v. Taylor, 248 F.3d 506, 510, 514 (6th Cir.) (noting that officers' protective sweep was justified because before arresting defendant in his apartment, they heard shuffling sounds indicating presence of second person), cert. denied, 534 U.S. 981, 122 S. Ct. 414, 151 L. Ed. 2d 315 (2001).  Under the circumstances, Sergeant Brintzinghoffer did not have to wager his safety and the lives of his fellow officers by erring on the side of excessive caution.

Second, the sweep was limited to a brief visual inspection of an area from which a person might have emerged to surprise and threaten the officers.  See Buie, supra, 494 U.S. at 327, 110 S. Ct. at 1094, 108 L. Ed. 2d at 281.  The officers on the perimeter detail did not have a complete view of the porch or the storage bin.  The search was in direct proportion to the risk.

Third, the sweep was swiftly conducted and did not exceed the time "necessary to dispel the reasonable suspicion of danger."  See Davila, supra, 203 N.J. at 115 (quoting Buie, supra, 494 U.S. at 335-36, 110 S. Ct. at 1099, 108 L. Ed. 2d at 287).

Last, the seizure of the rifle bag and its contents met the plain-view exception to the warrant requirement.  See State v. Bruzzese, 94 N.J. 210, 236 (1983), cert. denied, 465 U.S. 1030,

22

104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984).  Sergeant

Brintzinghoffer was lawfully on the porch when he first saw the

rifle bag; his discovery of the bag was inadvertent, that is, he

did not know in advance that a rifle would be located on the

porch; and it was immediately apparent to him that the bag and

its contents were evidence of a crime.  See ibid. (citing

Coolidge v. New Hampshire, 403 U.S. 443, 465-70, 91 S. Ct. 2022,

237-40, 29 L. Ed. 2d 564, 582-85 (1971));[6] see also Texas v.

Brown, 460 U.S. 730, 734, 103 S. Ct. 1535, 1539, 75 L. Ed. 2d

502, 508 (1983) (holding that criminal nature of container is

immediately apparent where officer "[b]ecause of his previous

experience in arrests for drug offenses, . . . was aware that

narcotics frequently were packaged in [similar] balloons");

State v. Johnson, 171 N.J. 192, 219 (2002) (holding that

criminal nature of container is immediately apparent where

"outward appearance of the clear plastic bag gave the officer a

degree of certainty that was functionally equivalent to the

plain view of crack-cocaine itself").

The trial court's finding that the protective sweep was

reasonable is "supported by sufficient credible evidence in the

---

[6] The United States Supreme Court has since removed the
inadvertence prong of this test.  See Horton v. California, 496
U.S. 128, 141-42, 110 S. Ct. 2301, 2310-11, 110 L. Ed. 2d 112,
125-26 (1990).  But see State v. Hathaway, 222 N.J. 453, 478-79
(2015) (applying inadvertence prong to plain-view exception
(citing Bruzzese, supra, 94 N.J. at 236)).

23

record." State v. Elders, 192 N.J. 224, 243 (2007) (quoting State v. Elders, 386 N.J. Super. 208, 228 (App. Div. 2006)). That finding was therefore entitled to deference. The Appellate Division was mistaken that a protective sweep incident to an in-home arrest requires reasonable suspicion even when the sweep is of "spaces immediately adjoining the place of arrest." Davila, supra, 203 N.J. at 114 (quoting Buie, supra, 494 U.S. at 333-34, 110 S. Ct. at 1097-98, 108 L. Ed. 2d at 285-86). Accordingly, we reverse the judgment of the Appellate Division granting the suppression motion.

V.

Next, defendant claims that he was denied the constitutional right to present a third-party guilt defense. We must determine whether the trial court erred in suppressing the exculpatory statement and prospective testimony of a witness who claimed to have placed the rifle in defendant's apartment unbeknownst to defendant.

A.

The Compulsory Process Clause in the United States and New Jersey Constitutions gives the accused in a criminal prosecution the right to call "witnesses in his favor." U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. The right "to call witnesses in one's own behalf" is essential to a "fair opportunity to defend against the State's accusations," and therefore is indispensable

24

to due process and a fair trial. Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045, 35 L. Ed. 2d 297, 308 (1973); State v. Guenther, 181 N.J. 129, 147 (quoting State v. Garron, 177 N.J. 147, 169 (2003)), cert. denied, 540 U.S. 1160, 124 S. Ct. 1169, 157 L. Ed. 2d 1204 (2004). Thus, the Compulsory Process Clause and due process "guarantee criminal defendants 'a meaningful opportunity to present a complete defense.'" Garron, supra, 177 N.J. at 168 (2003) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146, 90 L. Ed. 2d 636, 645 (1986)). "[A] complete defense includes a criminal defendant's right to introduce evidence of third-party guilt . . . ." State v. Cotto, 182 N.J. 316, 332 (2005).

Although defendant does not bear the burden of "prov[ing] his innocence through the introduction of evidence of third-party guilt," State v. Fortin, (Fortin II), 178 N.J. 540, 591 (2004), he has the right to introduce evidence that someone else committed the crime for the purpose of raising reasonable doubt about his own guilt, State v. Koedatich, (Koedatich II), 112 N.J. 225, 297, 299 (1988) (citing 1A Wigmore on Evidence §§ 139-41 (1983)), cert. denied, 488 U.S. 1017, 109 S. Ct. 813, 102 L. Ed. 2d 803 (1989). Thus, "[t]hird-party guilt evidence 'need only be capable of raising a reasonable doubt of defendant's guilt' to warrant its admissibility." Fortin II, supra, 178 N.J. at 591 (quoting Koedatich II, supra, 112 N.J. at 299). A

25

court cannot bar the admissibility of third-party guilt evidence that "has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case." Fortin II, supra, 178 N.J. at 591 (quoting State v. Sturdivant, 31 N.J. 165, 179 (1959), cert. denied, 362 U.S. 956, 80 S. Ct. 873, 4 L. Ed. 2d 873 (1960)); see also Cotto, supra, 182 N.J. at 333 (noting that third-party-guilt evidence is admissible so long as it "creates the possibility of reasonable doubt") (citing Fortin II, supra, 178 N.J. at 591; State v. Fulston, 325 N.J. Super. 184, 191 (App. Div. 1999), certif. denied, 163 N.J. 397 (2000)).

We now apply those principles to the facts before us.

### B.

Before trial, Santiago provided a notarized statement that he brought a gun into defendant's apartment and "stash[ed]" it on the balcony on his "third day at work" for defendant. He indicated that he intended to retrieve the gun and sell it to an associate, but was thwarted when he "approached the apartment [and] there was police running down on the place." Santiago took "full responsibility [for the] gun that was found at Mr. Cope's address" and emphasized that he could not "allow for an innocent man to go to prison because of something that didn't even belong to him."

26

The trial court, apparently, determined that the third day of Santiago's work corresponded with the day of defendant's arrest because of Santiago's observation of "police running down on the place" -- presumably referring to defendant's apartment. On July 5, 2006, the day of defendant's arrest, Santiago was incarcerated in the county jail, according to documents that are not in dispute. Having assumed that Santiago was in jail on the day of defendant's arrest, the court reached the ineluctable conclusion that Santiago could not possibly have placed the rifle on the balcony as he claimed.

The error in the court's reasoning is the assumption that the only day the police may have been in the area of defendant's apartment was July 5, 2006. The record does not contain irrefutable evidence to support that assumption. Indeed, one day before defendant's trial in May 2011, in response to police questioning, Santiago indicated that he could not recall the exact date on which he dropped the rifle off five years earlier and that the drop-off date had to be before his incarceration. In court, Santiago testified that he did not "want to state a date and it not be true and me be lying when I just raised my right hand." Importantly, the prosecutor affirmed that Santiago was claiming -- based on his response to police questioning -- that he put the rifle on the balcony before his incarceration.

In any event, Santiago's claims concerning when he placed the rifle in defendant's apartment were subject to dispute. However implausible Santiago's account may have seemed to the trial court, the credibility of Santiago's notarized statement and expected testimony ultimately was for the jury to resolve.

Santiago's prior statement constituted a statement against interest -- an exception to the hearsay rule -- and was therefore admissible in evidence.[7]  See N.J.R.E. 803(c)(25) (defining statement against interest as "[a] statement which was at the time of its making . . . so far tended to subject declarant to civil or criminal liability . . . that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true"); see also State v. White, 158 N.J. 230, 238 (1999) ("The law of evidence recognizes that a statement in which a party confesses to having committed a crime subjects the declarant to criminal liability, and therefore constitutes a statement that is against interest."). "A confession by another is of such probative importance in a criminal trial that its exclusion . . . has been held a denial of the defendant's due-process right to a fair trial." State v. Jamison, 64 N.J. 363, 378 (1974) (citing Chambers, supra, 410

---

[7] Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  N.J.R.E. 801(c).

28

U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297). In Jamison, we held that the court could not bar or dissuade a witness from testifying that he, not the defendant, committed the crime. Id. at 377-78.

The trial court's erroneous evidential ruling kept from the jury not only Santiago's statement accepting criminal responsibility, but also Santiago's testimony. Santiago twice appeared before the court, stating that he was prepared to testify and that he would not invoke his privilege against self-incrimination. The issue is not whether the court believed Santiago's testimony exculpated defendant, but whether his prospective testimony before the jury would have presented "a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case." Fortin II, supra, 178 N.J. at 591 (quoting Sturdivant, supra, 31 N.J. at 179).

Although a trial court retains broad discretion in determining the admissibility of evidence, that discretion is abused when relevant evidence offered by the defense and necessary for a fair trial is kept from the jury. See Chambers, supra, 410 U.S. at 294-95, 93 S. Ct. at 1045, 35 L. Ed. 2d at 308. A person who confesses to the crime of which the defendant is accused should not be barred from the witness stand. The only exception to this rule is when the confessor's claim is so patently false because it was impossible for him to have

29

committed the crime.  See Koedatich II, supra, 112 N.J. at 300 (noting that evidence of third-party guilt may not be excluded if "some link [is] demonstrated between the third party and the . . . crime").  Thus, for example, if documents of unquestioned authenticity established that the confessor was jailed in a maximum security facility when he claimed to have committed the crime, then the court would have authority to act.  In the absence of such strong evidence, which will rarely be present, the witness is subject to the rigors of cross-examination, which in our system of justice is the "greatest legal engine ever invented for the discovery of truth."  California v. Green, 399 U.S. 149, 158, 90 S. Ct. 1930, 1935, 26 L. Ed. 2d 489, 497 (1970) (quoting 5 Wigmore on Evidence § 1367 (1940)); see also Chambers, supra, 410 U.S. at 295, 93 S. Ct. at 1046, 35 L. Ed. 2d at 309 (stating that cross-examination "helps assure the 'accuracy of the truth-determining process'" (quoting Dutton v. Evans, 400 U.S. 74, 89, 91 S. Ct. 210, 220, 27 L. Ed. 2d 213, 227 (1970))).  A jury is not likely to be deceived about third-party guilt if the State can show that the third party was in jail at the time the crime was committed.  It is also unlikely that the defense would put such an unavailing witness on the stand.  Ultimately, the jury, not the judge, is the arbiter of the truth in reaching its verdict.  We conclude that the exclusion of Santiago's prior statement and prospective

30

testimony was an abuse of discretion. See Cotto, supra, 182 N.J. at 333.

## VI.

We agree with the Appellate Division that, on retrial, the version of N.J.R.E. 609 now in effect governs the admissibility of defendant's prior convictions. See Carmell v. Texas, 529 U.S. 513, 543, 120 S. Ct. 1620, 1638, 146 L. Ed. 2d 577, 601 (2000) (holding that changes to state's rules of evidence "which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt" may be applied retroactively without violating ex post facto clause (quoting Hopt v. Territory of Utah, 110 U.S. 574, 590, 4 S. Ct. 202, 210, 28 L. Ed. 262, 269 (1884))); see also N.J.R.E. 609(b).

## VII.

For the reasons expressed, we reverse the judgment of the Appellate Division, which overturned the trial court's denial of defendant's motion to suppress. The evidence discovered during the protective sweep of defendant's apartment is admissible at trial. We affirm the judgment of the Appellate Division reversing defendant's conviction based on the trial court's erroneous exclusion of evidence of third-party guilt. We remand to the trial court for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN'S opinion. JUSTICE FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.     A-13                          SEPTEMBER TERM 2014

ON CERTIFICATION TO     Appellate Division, Superior Court


STATE OF NEW JERSEY,

       Plaintiff-Appellant,

              v.

DEMETRIUS C. COPE (a/k/a
RAASHID HABSHIN, RASHEED
COPE, DEMETRIUS M. COPE, and
DEMETRIAS COPE),

       Defendant-Respondent.



DECIDED           April 25, 2016
              Chief Justice Rabner              PRESIDING
OPINION BY        Justice Albin
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | AFFIRMED/ REVERSED/ REMANDED | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ---------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |