**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5220-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDWARD R. COLLINS,

    Defendant-Appellant.

_____

Submitted November 5, 2018 – Decided January 7, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment Nos. 16-05-0442.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Timothy P. McCann, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Edward Collins appeals from a June 26, 2017 judgment of conviction for second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b). Defendant moved to suppress the handgun seized without a warrant, which formed the evidential basis for the charge. When his motion was denied, defendant entered a negotiated guilty plea, and was sentenced to a five-year term of imprisonment with a five-year period of parole ineligibility, in accordance with the Graves Act, N.J.S.A. 2C:43-6(c).[1]

On appeal, defendant challenges the denial of his suppression motion as permitted under Rule 3:5-7(d), raising the following single point for our consideration:

> POINT I
>
> THE MATTER SHOULD BE REMANDED FOR ADDITIONAL FACTUAL FINDINGS AND A NEW DECISION REGARDING SUPPRESSION OF EVIDENCE. THE JUDGE INEXPLICABLY DECLARED THAT SHE WAS NOT OBLIGATED TO RESOLVE A CRITICAL FACTUAL DISPUTE IN THE TESTIMONY.

Having considered the argument and applicable law, we affirm.

---

[1] As part of the plea agreement, defendant was also sentenced to two three-year concurrent terms of imprisonment for violating his probation sentence imposed on two separate indictments.

A-5220-16T4

The following facts were adduced at the suppression hearing conducted on February 22, 2017, during which Trenton Police Detective Katherine Cox and New Jersey State Police Detective Christopher Talar testified for the State. Defendant and his cousin, Linda Romero, testified for the defense.

After receiving information from a confidential informant that defendant had recently moved to Beatty Street and was "known to distribute narcotics and possess firearms[,]" Detective Cox, who was then assigned to the violent crimes unit, began an investigation. In the course of the investigation, Cox learned that defendant had active arrest warrants for motor vehicle violations and non-payment of child support, and contacted the U.S. Marshals for assistance in his apprehension.

At approximately 12:30 p.m. on January 20, 2016, Cox confirmed defendant's presence in the residence when she observed him open the front door of the Beatty Street address "without knocking or announcing his presence," and walk inside. Cox promptly alerted the U.S. Marshals, and a team of marshals, as well as fellow officers and members of the New Jersey State Police, responded to the scene. Given defendant's criminal history, which included prior convictions for "weapons offenses, narcotics offenses [and] eluding[,]" the officers used safety precautions in entering the residence. There were two doors

3

at the front of the residence, an outside screen door, which was closed, and "[a] regular . . . wood door[,]" which was open. The officers entered the residence without knocking or announcing their entry. Upon entering, the officers initially encountered Romero at the doorway and observed defendant in "the back of the living room."

Detective Talar was a member of the team of officers who entered the residence and was positioned towards the back of the "stack" of officers. Once inside the residence "less than a minute" after the initial officers made entry, Talar observed defendant already handcuffed and on the floor, "in the kitchen area." According to Talar, "there[] [was] a living room [at the front of the residence], a very narrow hallway, and then the kitchen; . . . all very close together. And [defendant] was in the back of that hallway in . . . the kitchen area."

As the officers conducted a protective sweep to "clear[] the residence" for "safety[,]" an officer in the kitchen area yelled out that "there was a weapon located on the top of the refrigerator[,]" which was within one foot of the entrance to the kitchen. The weapon, which was described as a loaded "black, [h]i-point 40-caliber semiautomatic handgun[,]" was seized and secured. In addition to observing the handgun, Talar also observed and seized heroin "in

4

plain view" in the "back portion of the kitchen[,] in [an open] cabinet" above the sink area.[2]  After the seizures, defendant was administered Miranda[3] warnings. He admitted that the handgun and the drugs belonged to him, and consented to a search of the residence, which uncovered drug paraphernalia "in a cabinet" in the "mudroom."

Defendant testified he moved to the Beatty Street address about one month earlier and asked Romero to babysit his infant son on the date in question. According to defendant, when the officers entered, he was "kneeling over [the] sofa"[4] in the living room after retrieving a "[h]ot [p]ocket" from the kitchen, and never moved from that position.  He testified that one of the officers went into the kitchen and returned with the handgun.  Romero confirmed that defendant was "kneeled down" "towards the back of the sectional," eating a hot pocket, when the officers entered the residence, and defendant never moved from that position.  She also confirmed that one of the officers went into the kitchen and retrieved the gun "four to five minutes" later.

---

[2]  The drug charge was dismissed in accordance with the terms of the plea agreement.

[3]  Miranda v. Arizona, 384 U.S. 436 (1966).

[4]  Defendant testified that at the time, he weighed 280 pounds.

Following the hearing, in an oral decision rendered on April 26, 2017, the judge denied the motion, finding "that the police acted lawfully in entering defendant's home to execute the arrest warrant," that "the police . . . did not exceed their right to conduct a protective sweep of the property incident to the arrest of the defendant[,]" and "that the plain view doctrine [applied] to the discovery of the guns and drugs." The judge determined that "[m]any of the relevant facts . . . regarding the police entry into the home [were] not disputed." However, acknowledging "that there [were] some discrepancies in the . . . testimony of [Detective] Talar, Ms. Romero, and Mr. Collins as to what happened when the officers approached and entered [the residence]," the judge found "that most of those discrepancies [were] not relevant to th[e] decision."

The judge elaborated:

> For instance, whether [defendant] was in fact on the floor partially in the hallway and partially in the kitchen when [Detective] Talar first saw him as[] Talar testified; or whether he was kneeling on the floor in the living room behind the couch and near the hall that leads to the kitchen, as was testified to by Romero and defendant, is of no moment. Both areas are in close proximity and people may honestly remember details differently.
>
> But whether he was in the hall or behind the couch, all three witnesses testified that . . . numerous police officers who entered the house spread out and did a protective sweep of the other rooms. All three

6

witnesses stated that during that sweep, an officer called out from the kitchen indicating that he had found a gun.

Again, while Romero['s] testimony may differ from [Detective] Talar's in that he says he and another officer were in the kitchen when the officer called gun, and she says only one . . . officer was in the kitchen and called gun, I find that discrepancy is irrelevant. No one disputes that the gun was found in the kitchen during the protective sweep.

No . . . testimony was offered to dispute that the gun was found on the top of the refrigerator. While defendant testified that it was his gun but that he did not know it was on top of the refrigerator, he never testified that it was elsewhere. He never offered testimony that the gun was not in plain view of the police when they were conducting a protective sweep and that they exceeded the scope of the protective sweep in discovering it.

Turning to another discrepancy between the State's witness and the defense version, the judge explained:

There is a discrepancy in the time that it took the police to discover the gun, a discrepancy between Romero's testimony and the others. Romero testified that the police officer was in the kitchen four to five minutes before he brought the gun out. [Detective] Talar said that the discovery of the gun was almost immediate to Talar's entry into the house, which was less than one minute after the first officer entered the house.

Defendant's version was closer to that of [Detective] Talar. Defendant stated that he never

moved from the spot he was in when the police entered, and that the officers went [past] him into the kitchen and he heard an officer say "gun, gun, gun" and then they brought the gun out.

> Defendant's version does not include a five-minute time . . . lapse from the time of entry until the gun was found. Again, people remember things differently, and Romero's testimony could be colored by her bias in favor of her cousin . . . . I find no credible evidence to suggest that the police took an inordinate amount of time to clear the house for officers' safety, to assure no one else was hiding in the house. That protective sweep does not need to end immediately upon the defendant being placed in [hand]cuffs. It is reasonable to complete it before the officers can turn their backs and remove the defendant from the premises.

Next, citing State v. Bruzzese, 94 N.J. 210, 236 (1983), the judge noted

that

> [t]he plain view exception at the time of this incident require[d] three prongs to be met: [o]ne, that the seizing officer must have lawful authority to be in the location where the evidence is found; two, that the discovery of the evidence must be inadvertent; and three, that it must be immediately apparent to the officer that the items seized are contraband or evidence.[5]

---

[5] While our Supreme Court prospectively removed the inadvertence requirement in State v. Gonzales, 227 N.J. 77, 101 (2016), because the search predated Gonzales, the judge correctly applied the previous three-part test.

The judge concluded that because the police did not exceed their right to conduct a protective sweep of the property incident to defendant's arrest, and the discovery of the evidence, which was immediately identifiable as contraband, was inadvertent, all three prongs were satisfied. The judge entered a memorializing order and this appeal followed.

We review a motion judge's factual findings in a suppression hearing with great deference. Gonzales, 227 N.J. at 101. In our review of a "grant or denial of a motion to suppress[,] [we] must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). We defer "'to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to the trial court's legal conclusions or interpretation of the legal consequences that flow from established facts. Thus, our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Applying that standard of review, we discern substantial credible evidence in the record to support the judge's findings of fact and we agree with the judge's

A-5220-16T4

interpretation of the legal consequences that flow from those facts. We conclude that the State's proofs established by a preponderance of the evidence, State v. Mann, 203 N.J. 328, 337-38 (2010), that the warrantless seizure of the gun and drugs was justified by the plain view doctrine in conjunction with a permissible protective sweep. See State v. Cope, 224 N.J. 530 (2016). Defendant argues that because the motion judge refused "to resolve the factual dispute" regarding "where the arrest took place - - in the living room or down the hallway on the edge of the kitchen - - it is impossible to evaluate" whether the protective sweep "was valid." Consequently, according to defendant, "the matter should be remanded for the judge to make the necessary factual finding." We disagree.

"[A] 'protective sweep' is a quick and limited search of premises, incident to an arrest[,] and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." State v. Davila, 203 N.J. 97, 113 (2010) (quoting Maryland v. Buie, 494 U.S. 325, 327 (1990)).

> [A] protective sweep incident to an in-home arrest is permissible under the following circumstances. First, the police may sweep the "spaces immediately adjoining the place of arrest from which an attack" might be launched even in the absence of probable cause or reasonable suspicion. [Buie, 494 U.S. at 334]. Any wider sweep must be justified by "specific facts that would cause a reasonable officer to believe there is

10

an individual within the premises who poses a danger" to the arresting officers. [Davila, 203 N.J. at 115]. Second, the sweep must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." [Buie, 494 U.S. at 327]. Although the sweep "is not a search for weapons or contraband," such items may be seized if observed "in plain view" during the sweep. [Davila, 203 N.J. at 115]. Last, the sweep should last "no longer than is necessary to dispel the reasonable suspicion of danger" or "to complete the arrest and depart the premises." Ibid. (quoting [Buie, 494 U.S. at 335-36]).

[Cope, 224 N.J. at 548.]

In Cope, officers arrested the defendant pursuant to an arrest warrant in his living room, but, after sighting the defendant on the porch immediately before the arrest, one of the officers "conducted a protective sweep of the bedroom, bathroom, and back porch to prevent a surprise attack." 224 N.J. 548-49. The officer seized a rifle bag containing a rifle from the porch because he knew that defendant was barred from possessing firearms based on his prior convictions. Id. at 549. In upholding the trial court's finding that the protective sweep was reasonable, the Court concluded "that the porch was in such close proximity to the place of arrest—indeed, immediately adjoining it—that a protective sweep of that area was permissible even without probable cause or reasonable suspicion." Ibid.

Here, the protective sweep satisfied the conditions set forth in <u>Buie</u>, <u>Davila</u>, and <u>Cope</u>. The officers were lawfully inside the residence executing valid arrest warrants, the officers swept the areas "immediately adjoining" the place of arrest, the sweep was narrowly confined to a cursory visual inspection of those areas, the sweep was no longer than was necessary to complete the arrest, and the seizure of the evidence met the plain view exception to the warrant requirement. The "officers had the right to be where they were—in defendant's house effectuating a valid arrest warrant—and to seize any evidence of crime that was within their plain view." <u>Bruzzese</u>, 94 N.J. at 242.

Contrary to defendant's contention, the motion judge did not refuse to resolve the factual dispute but properly determined based on the testimony that the kitchen and living room were immediately adjacent to each other. Thus, because the kitchen and the living room were "in such close proximity," whether the arrest location was the kitchen or the "immediately adjoining" living room would have no effect on the legality of the protective sweep. <u>Cope</u>, 224 N.J. at 549.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12