# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0863-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

L.Z.,

     Defendant-Appellant.

_____

Argued December 17, 2019 – Decided February 12, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-07-2243.

Jennifer L. Gottschalk argued the cause for appellant (Jennifer L. Gottschalk and Thomas J. DeMarco, attorneys; Jennifer L. Gottschalk, of counsel and on the brief; Thomas J. DeMarco, of counsel).

Lila Bagwell Leonard, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Lila Bagwell Leonard, of counsel and on the brief).

PER CURIAM

A jury convicted defendant of four crimes related to the sexual assault of a minor: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(c); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a), as a lesser-included offense; and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). Defendant was sentenced to an aggregate prison term of twenty-two years, with a period of parole ineligibility, as well as parole supervision for life.

He contends that his convictions should be reversed because he was not allowed to cross-examine the child's mother on her immigration status, and he was not accorded a Rule 104 hearing on that issue. He also argues that the trial court erred in charging the jury on the lesser-included offense of aggravated criminal sexual contact. We reject these arguments and affirm.

I.

The evidence at trial included testimony by the victim, the victim's mother, and defendant's statement given to law enforcement personnel. That evidence established that defendant had sexual relations with the daughter of his girlfriend when the daughter was between the ages of twelve and fourteen and defendant was approximately between the ages of twenty-two and twenty-four.

In 2010, at the age of ten, the victim came from El Salvador to live with her mother and sister in New Jersey.  Defendant, who was then approximately twenty years old, was the live-in boyfriend of the victim's mother.  Defendant watched and cared for the victim and her sister when the mother was at work.

When the victim was twelve years old, defendant began having sexual intercourse with her.  According to the victim, she and defendant had sex multiple times over a period of years.

In 2014, when the victim was fourteen years old, she disclosed the relationship to her stepmother, who informed the victim's father.  When confronted by the father, defendant acknowledged that he was having sex with his fourteen-year-old daughter and he tried to justify the relationship by claiming that he was in love with her and wanted to be with her.

The father contacted the Division of Child Protection and Permanency (Division), and the Division referred the matter to the police. Thereafter, both the victim and defendant were interviewed by a detective from the prosecutor's office.  The victim disclosed that she and defendant had sexual intercourse multiple times.  After waiving his Miranda[1] rights, defendant initially denied any wrongdoing, but later admitted to "hav[ing] sex with" the victim "[t]hree or

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0863-18T2

four times." He also acknowledged that the sexual intercourse had taken place both at the apartment where the family lived and at a hotel.

After the mother testified on direct examination, defense counsel requested a Rule 104 hearing to explore whether he could question her on her immigration status. Defense counsel argued that if the mother was not a citizen of the United States, it would be relevant in terms of her credibility to determine whether she had sought favorable treatment as an immigrant in exchange for her testimony at trial. The prosecutor represented that she was not aware of any promise by her office to assist the mother with her immigration issues in exchange for her testimony in this matter. The trial court denied the request for a Rule 104 hearing and ruled that, to the extent the questioning about the mother's immigration status had any relevance, it was outweighed by potential prejudice and confusion. Accordingly, the court ruled that defendant could not cross-examine the mother on her immigration status under Rule 403. The court also ruled that no other witness could be questioned regarding his or her immigration status.

At the jury charge conference, the trial court proposed to charge the jury with each crime in the indictment, and a lesser-included offense of third-degree aggravated criminal sexual contact on the charges of second-degree sexual

4

assault. Neither defense counsel nor the prosecutor objected. Thus, the jury was charged with the lesser-included offense, which included the element that defendant stood in loco parentis to the victim.

As already noted, the jury convicted defendant of first-degree aggravated sexual assault, second-degree sexual assault, third-degree aggravated criminal sexual contact, as a lesser-included offense of one of the charges of sexual assault, and second-degree endangering the welfare of a child. On the first-degree conviction, defendant was sentenced to sixteen years in prison, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, followed by parole supervision for life. He was required to register under Megan's Law, N.J.S.A. 2C:7-2, and prohibited from having any contact with the victim or her family under Nicole's Law, N.J.S.A. 2C:14-12; N.J.S.A. 2C:44-8. On the conviction for endangering, defendant was sentenced to a consecutive prison term of six years. The sentences for the other two convictions were merged with his sentence for his first-degree conviction.

## II.

Defendant now appeals his convictions. He does not dispute that he had sexual relations with the victim when she was between the ages of twelve and

fourteen and he was more than ten years older than the victim. Instead, he presents two arguments for our consideration, which he articulates as follows:

POINT ONE – THE TRIAL COURT'S FAILURE TO CONDUCT A RULE 104 HEARING AT DEFENDANT'S BEHEST REGARDING A WITNESS' IMMIGRATION STATUS WAS UNCONSTITUTIONAL, AS IT DEPRIVED HIM OF HIS RIGHT TO CONFRONT AND CROSS-EXAMINE HER PROPERLY.

POINT TWO – THE JURY'S VERDICT ON THE LESSER-INCLUDED OFFENSE OF AGGRAVATED CRIMINAL SEXUAL CONTACT ON COUNT FOUR WAS UNLAWFUL.

A.

Defendant argues that he was denied a fair trial and his constitutional right to effective cross-examination because he was prohibited from asking the victim's mother about her immigration status. He contends that that violation was "compounded" when the trial court applied the same ruling to all witnesses. Defendant asserts that a witness' immigration status can be admissible if the State had promised the witness favorable immigration treatment in exchange for testimony. Finally, defendant argues that the trial court should have conducted a Rule 104 hearing before precluding all cross-examination regarding immigration status.

A-0863-18T2

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. State v. Torres, 183 N.J. 554, 567 (2005). "[W]e will reverse an evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). A trial court can abuse its discretion "when relevant evidence offered by the defense and necessary for a fair trial is kept from the jury." State v. Cope, 224 N.J. 530, 554-55 (2016).

Both the United States and New Jersey Constitutions guarantee a defendant in a criminal matter the right to confront adverse witnesses. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10; State v. Guenther, 181 N.J. 129, 147 (2004). "A defendant's right to confrontation is exercised through cross-examination, which is recognized as the most effective means of testing the State's evidence and ensuring its reliability." Guenther, 181 N.J. at 147.

Generally, extrinsic evidence can be introduced if it is relevant to the issue of credibility. N.J.R.E. 607. There are exceptions to that rule including (1) the use of specific instances of conduct to attack the credibility of a witness, N.J.R.E. 405; (2) the use of a trait of character, which is usually disallowed, unless the prior act was a "false accusation against any person of a crime similar

A-0863-18T2

to the crime with which defendant is charged," N.J.R.E. 608; and (3) if its "probative value is substantially outweighed by the risk of . . . [u]ndue prejudice" or confusion, N.J.R.E. 403.

In State v. Sanchez-Medina, our Supreme Court addressed when a party's immigration status may be relevant. 231 N.J. 452, 463 (2018). There, the Court ruled that in most cases, the immigration status of a witness is irrelevant, and the jury "should not learn about it." Ibid. The Court went on to point out that immigration status can be admissible "[i]n limited circumstances," such as when the prosecutor promises "a witness favorable immigration treatment in exchange for truthful testimony," or if "a defendant had lied about his immigration status to obtain government benefits as part of a scheme to defraud . . . ." Ibid. The Court addressed the relevancy and prejudicial effect of immigration status and explained:

> A defendant's immigration status is likewise not admissible under other rules of evidence. It is not proof of character or reputation that can be admitted under Rules 404 or 608 . . .. Nor is a person's immigration status admissible as a prior bad act under Rule 404(b). To be admissible, such evidence must be "relevant to a material issue," and its probative value "must not be outweighed by its apparent prejudice."
>
> [Id. at 464-65 (citation omitted).]

We conclude that the trial court did not abuse its discretion in denying defendant the ability to question the mother and other witnesses concerning their immigration status. Defendant produced no evidence indicating that the mother or any other witness had been promised assistance in dealing with immigration issues in exchange for truthful testimony. Indeed, when the issue arose, the prosecutor represented that she was not aware of any such promise. Given the highly prejudicial effect of allowing the jury to hear about the mother's immigration status, it was appropriate for the trial court to exclude that information under Rule 403.

Moreover, we reject defendant's argument that the trial court was required to hold a Rule 104 hearing on the immigration issue. Rule 104(a) allows the trial court to hear and determine matters relating to "the qualification of a person to be a witness, or the admissibility of evidence" outside the presence of a jury. The decision to conduct a Rule 104 hearing, however, rests within the sound discretion of the trial court. Kemp ex rel. Wright v. State, 174 N.J. 412, 432 (2002).

The trial court here considered defendant's request for a Rule 104 hearing but found that immigration status had no bearing on the witness' credibility, and the defendant was engaging in a "fishing expedition." The trial court also

appropriately recognized that even allowing a Rule 104 hearing could have a chilling effect on a witness' willingness to testify. We agree.

In short, defendant's request to question the mother or any other witness about their immigration status was properly denied because the trial court reasonably concluded that the inquiry had virtually no probative value to a relevant issue and was unduly prejudicial. Defendant also presented no information that there was a reasonable basis for a Rule 104 hearing, and we discern no abuse of discretion in the trial court's denial of such a hearing.

B.

Defendant argues that the trial court erred in charging the jury on third-degree aggravated sexual contact, as a lesser-included offense of second-degree sexual assault. In that regard, defendant points out that aggravated criminal sexual assault includes the element of in loco parentis, but that element is not included in the crime of second-degree sexual assault.

Defendant did not object to the lesser-included charge. Accordingly, we review this issue for plain error. R. 1:7-2; R. 2:10-2. A plain error is disregarded unless it is "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. "To warrant reversal," the error must be sufficient to raise "reasonable doubt . . . as to whether the error led the jury to a result it

otherwise might not have reached." State v. Funderburg, 225 N.J. 66, 79 (2016). Moreover, the prejudicial effect of the alleged error is viewed "in light of the totality of the circumstances," including the entire jury charge. State v. Adams, 194 N.J. 186, 207 (2008) (quoting State v. Marshall, 123 N.J. 1, 145 (1991)).

Trial courts are required "to submit to the jury . . . those offenses charged in the indictment," as well as "uncharged lesser-included offenses grounded in the evidence." State v. Denofa, 187 N.J. 24, 41 (2006) (citations omitted). Consequently, courts are required to instruct the jury on a lesser-included offense if counsel requests such a charge and there is a "rational basis in the record" for the charge or, in the absence of a request, if the record clearly indicates a lesser charge is warranted. State v. Garron, 177 N.J. 147, 180 n.5 (2003) (citations omitted). An offense is included if:

> (1) [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (2) [i]t consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or
>
> (3) [i]t differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.
>
> [N.J.S.A. 2C:1-8(d).]

See also State v. Thomas, 187 N.J. 119, 131-32 (2006).

Defendant was charged with five crimes, including two counts of first-degree aggravated sexual assault and two counts of second-degree sexual assault. To convict defendant on first-degree aggravated sexual assault, a jury must find that defendant committed (1) an act of penetration; (2) with a victim who was at least thirteen but less than sixteen years old; and (3) the defendant stood in loco parentis within the household. N.J.S.A. 2C:14-2(a)(2); Model Jury Charges (Criminal), "Aggravated Sexual Assault Victim at Least 13 but Less Than 16 (N.J.S.A. 2C:14-2a(2))" (rev. Mar. 10, 2008). To convict defendant of second-degree sexual assault, the jury must find that defendant committed (1) an act of penetration; (2) with a victim who was at least thirteen years but less than sixteen years old; and (3) the defendant is at least four years older than the victim. N.J.S.A. 2C:14-2(c)(4). To convict defendant of third-degree aggravated criminal sexual contact, the jury must find that defendant committed (1) an act of sexual contact; (2) with a victim who was at least thirteen but less than sixteen years old; and (3) the actor stood in loco parentis within the household. N.J.S.A. 2C:14-2(a)(2), -3(a).

We find no reversible error in the trial court's decision to charge the jury with the lesser-included offense of aggravated criminal sexual contact. While

12

that offense had the element of in loco parentis, which is not an element to second-degree sexual assault, defendant clearly knew that he was being charged with standing in loco parentis to the victim. In loco parentis was an element of the first-degree aggravated assault charge. Moreover, defendant did not dispute that he stood in loco parentis to the victim. Indeed, he admitted it in his statement to the police and did not dispute this issue at trial. Thus, defendant suffered no prejudice because the elements of the lesser-included charge were "within the four corners" of the indictment. See State v. Tully, 94 N.J. 385, 393 (1983).

Defendant was also not prejudiced because his sentence for aggravated criminal sexual contact was merged with his sentence for aggravated sexual assault. Accordingly, defendant was not prejudiced either in his ability to prepare a defense or by the consequences of his conviction for the lesser-included offense.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                                 A-0863-18T2