**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0996-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEITH TERRES,

     Defendant-Appellant.

_____

Argued telephonically argued June 17, 2020 –
Decided July 23, 2020

Before Judges Koblitz and Gilson.

On appeal from the Superior Court of New Jersey, Law
Division, Salem County, Indictment Nos. 17-12-0510
and 17-12-0511.

Tamar Yael Lerer, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora,
Public Defender, attorney; Douglas R. Helman,
Assistant Deputy Public Defender, and Tamar Yael
Lerer, of counsel and on the briefs).

David M. Galemba, Assistant Prosecutor, argued the
cause for respondent (John T. Lenahan, Salem County

Prosecutor, attorney; David M. Galemba, of counsel
and on the brief).

PER CURIAM

Following the denial of his motion to suppress physical evidence, defendant Keith Terres pled guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and fourth-degree receiving stolen property, N.J.S.A. 2C:20-7(a), which had been amended from a third-degree charge. Defendant was sentenced to five years in prison with forty-two months of parole ineligibility on the second-degree conviction as prescribed by the Graves Act, N.J.S.A. 2C:43-6(c), and a concurrent term of three years in prison on the fourth-degree conviction.

Defendant appeals, arguing that the trial court erred in denying his motion to suppress and his three-year sentence on the fourth-degree conviction is illegal. We hold that the motion to suppress was properly denied and affirm defendant's conviction on the charge of second-degree unlawful possession of a weapon. We agree the sentence on the conviction for fourth-degree receiving stolen property is incorrect and therefore we vacate that sentence and remand for resentencing.

A-0996-18T1

I.

We discern the relevant facts from the evidence presented at the hearing on the motion to suppress. Two witnesses testified at that hearing: Detectives John Petrosky and Richard Hershey.

Petrosky is a detective in the fugitive unit of the Gloucester County Prosecutor's Office. He explained that in September 2017 he was responsible for executing an arrest warrant for Tyler Fuller. Fuller had been charged with third-degree theft, had been released pretrial on conditions, which included wearing an electronic monitoring bracelet, and had violated the conditions of his release.

Petrosky went to Fuller's last known address and was informed by the homeowner that Fuller had been asked to leave and Fuller had gone to stay at the Ca Nook Trailer Park, possibly with defendant. The trailer park was outside of Gloucester County so Petrosky contacted the State Police who had jurisdiction over the trailer park. Detective Hershey, a State Police officer, informed Petrosky that defendant had just been arrested. After speaking with defendant, Hershey told Petrosky that Fuller was at the trailer park and to look for him in the first building on the right side closest to the park's entrance.

A-0996-18T1

Petrosky went to the trailer park, knocked on the front door of the first building, but no one responded.

The following morning, September 14, 2017, Petrosky was informed by Pretrial Services of a tamper signal indicating that Fuller's ankle bracelet had been removed. Petrosky and another officer from the Prosecutor's Office then went to the State Police barracks to meet with Hershey and another trooper. Hershey gave a briefing concerning the trailer park and advised that defendant had been arrested one or two days prior "for a large amount of narcotics."

The four officers then went to the trailer park to execute the warrant for Fuller's arrest. After parking their vehicles, the officers approached the first building on the right. Petrosky and Hershey went towards the front of the building while the other two officers went around the building to cover the back. According to Petrosky, the door to the building was open and he saw two men, one sitting on a chair and the other standing in the front doorway with his back to the officers. Petrosky announced their presence and the man who was standing ran into the building. Petrosky pursued that man, believing he might be Fuller, and apprehended him in a room where bullets and spent shell casings were lying on the floor. The man was later identified to be Mark Boston.

A-0996-18T1

Meanwhile, Hershey entered the building and detained the man who had been sitting, later identified as William Willis. Willis and Boston both had active warrants and they were arrested. Willis was shown a photograph of Fuller and he told the officers that he had seen Fuller a few minutes earlier in a trailer in the back of the park. Willis warned the officers: "be careful . . . [there are] two males back there." Willis also told Petrosky that he believed the trailer where Fuller was staying belonged to defendant.

While the other officers stayed with Boston and Willis, Petrosky and Hershey walked to the trailer in the back of the park. Petrosky approached the back of the trailer while Hershey covered the front. Petrosky looked into the trailer through a window and saw Fuller inside talking to a woman. Petrosky ordered Fuller to get on the ground and told him he was under arrest. Fuller did not comply; instead, he ran for the front door. Petrosky yelled to alert Hershey, who apprehended Fuller on the front porch, approximately five feet from the door of the trailer.

Petrosky joined Hershey on the front porch and the woman who was inside came to the front door. Petrosky asked her where the other man was, but she denied there was another man inside the trailer. Petrosky stepped inside the

A-0996-18T1

trailer, announced his presence, and walked through the trailer to see if there was anyone else present.

While walking through the trailer, Petrosky saw a hole in the floor behind a washer and dryer. The hole was partially covered with plywood and Petrosky observed the barrels of two rifles sticking out of the hole. Petrosky looked inside the hole, which was three to four feet wide and three feet deep, and saw that it contained two rifles and a handgun.

Petrosky did not find anyone else in the residence and the officers then secured the trailer. Thereafter, Hershey requested a warrant to search defendant's trailer and vehicles on the property. The warrant was approved by a judge and the handgun and rifles were seized.

In December 2017, defendant was indicted for thirteen crimes, which included numerous weapons offenses and drug-related crimes. In a separate indictment, defendant was charged with third-degree receiving stolen property.

As previously noted, defendant moved to suppress the physical evidence seized from his home, arguing that the search warrant was the fruit of an illegal warrantless search. In that regard, he contended that the protective sweep of his trailer was unlawful.

A-0996-18T1

After hearing the testimony and considering the exhibits submitted at the evidentiary hearing, on July 26, 2018, the trial court denied the motion announcing its decision on the record. The court found that Petrosky lawfully entered defendant's trailer to conduct a protective sweep. In that regard, the court found that (1) Fuller was apprehended on the front porch of the trailer just feet from the door; (2) Petrosky had been informed that there was another man with Fuller and it was reasonable for Petrosky to conduct a protective sweep; (3) there may have been a threat if another man was present in the trailer; (4) the search was limited in scope, "cursory in nature," and was conducted in three to five minutes; and (5) the weapons were observed in a hole in which a person could have been concealed. Accordingly, the trial court found that all the information included in the affidavit in support of the search warrant was lawfully obtained. The court then found that the warrant was valid and denied the motion to suppress the evidence that had been seized pursuant to the warrant.

As noted, defendant thereafter pled guilty to second-degree unlawful possession of a weapon. As part of that plea agreement, the State agreed to recommend that the twelve other charges against defendant be dismissed. Under a separate indictment, defendant also pled guilty to fourth-degree receiving stolen property, which had been downgraded from a third-degree charge.

7

Defendant was then sentenced to concurrent terms in two separate judgments of conviction.

## II.

On appeal, defendant makes two arguments, the first of which he breaks down into two sub-arguments:

> POINT I – BECAUSE OFFICERS ENTERED MULTIPLE PRIVATE RESIDENCES WITHOUT A WARRANT, CONSENT, OR EXIGENCY, THE POLICE ENTRIES WERE ILLEGAL. THE EVIDENCE, WHICH WAS FOUND AS A FRUIT OF THESE UNLAWFUL ENTRIES, MUST BE SUPPRESSED.
>
> A.    The Officers' Entry Into The First Home Was Illegal.
>
> B.    The Officers' Entry Into The Second Home was Illegal.
>
> POINT II – BECAUSE THE SENTENCE IMPOSED ON ONE OF THE INDICTMENTS IS LONGER THAN THE LEGAL MAXIMUM, THE MATTER MUST BE REMANDED FOR RESENTENCING.

We reject the arguments concerning the motion to suppress but agree that defendant was improperly sentenced on the fourth-degree conviction.

Initially, we identify our well-established standard of review. Appellate courts give deference "to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record." State v. Zalcberg,

232 N.J. 335, 344 (2018) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). The trial court's factual findings "should be set aside only when [the] court's findings of fact are clearly mistaken." Ibid. (alteration in original) (citation omitted). By contrast, legal issues are reviewed de novo. Ibid. (quoting State v. Hathaway, 222 N.J. 453, 467 (2015)).

A.    The Seizure of the Weapons

Defendant makes two arguments concerning the seizure of the weapons. First, he contends that the search of the first building in the trailer park was unlawful. Therefore, he argues that everything thereafter was the fruit of an unlawful search. Second, defendant argues that the search of his trailer was also unlawful.

Defendant did not raise the issue concerning the search of the first building before the trial court. Accordingly, we reject that argument on this basis alone. See State v. Alexander, 233 N.J. 132, 148 (2018) (citation omitted) (recognizing that appellate courts generally do not address issues that were not raised before the trial court). Nevertheless, we note that even if we were to consider defendant's arguments concerning the first search, they lack merit for several reasons.

A-0996-18T1

Defendant does not have standing to challenge the arrest of Willis, who provided the information that lead the detectives to arrest Fuller at defendant's trailer. The arrest of Willis did not take place in defendant's home or in a building over which defendant had any "proprietary, possessory, or participatory interest." See State v. Randolph, 228 N.J. 566, 581 (2017) (quoting State v. Alston, 88 N.J. 211, 228 (1981)); see also State v. Abdullah, 372 N.J. Super. 252, 273-74 (App. Div. 2004) (holding that the defendant did not have standing to challenge evidence seized from the victim's apartment because he did not have a "proprietary, possessory, or participatory interest" in that apartment), rev'd on other grounds, 184 N.J. 497 (2005).

In addition, the evidence at the hearing established that Petrosky and Hershey lawfully entered the first building. Petrosky testified without contradiction that he thought Boston, the man standing in the doorway of the first building, might be Fuller. Accordingly, when Petroksy announced his presence and Boston ran into the first building, Petrosky had a right to lawfully pursue Boston to effectuate the arrest warrant. See State v. Jones, 143 N.J. 4, 19 (1995) ("Police officers acting pursuant to a valid arrest warrant have the right to follow a fleeing suspect into a private residence.").

Defendant relies on State v. Miller, 342 N.J. Super. 474 (App. Div. 2001), to argue that the attempted execution of the arrest warrant in the first building was illegal. The facts and rationale of Miller are distinguishable. In Miller, the police sought to execute an arrest warrant at an address where they believed the defendant resided; however, when they arrived, they were informed that the defendant was not there. 342 N.J. Super. at 480-82. The officers gained entry by using threats, found the defendant, arrested him, and seized marijuana and drug paraphernalia. Ibid. Thereafter, that evidence was suppressed because the police unlawfully entered the residence. Id. at 500.

Here, in contrast, the police did not gain entry to the first building with improper threats. Instead, Petrosky followed Boston after he fled, believing he might be Fuller. Accordingly, the detectives lawfully entered the first building and lawfully arrested Willis and Boston.

The real issue concerning the seizure of the weapons is whether Petrosky lawfully entered defendant's trailer (that is, the second building) as part of a lawful protective sweep. Given the factual findings made by the trial court, we hold that Petrosky's protective sweep was lawful.

"A protective sweep of a home incident to a lawful arrest is a reasonable search under both the Fourth Amendment [to the United States Constitution] and

Article I, Paragraph 7 of our State Constitution." State v. Cope, 224 N.J. 530, 546 (2016) (citing Maryland v. Buie, 494 U.S. 325, 327-28 (1990)). A "'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." State v. Davila, 203 N.J. 97, 113 (2010) (quoting Buie, 494 U.S. at 327).

"The rationale for the protective sweep is officer safety. It is recognized that police officers who make an arrest in a home face a great risk of danger because they are at the disadvantage of being on [their] adversary's turf." Cope, 224 N.J. at 546-47 (alteration in original) (citations omitted). "The permissible scope of a protective sweep incident to a home arrest depends on the radius of danger facing the officers." Id. at 547. "The officers may 'look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched' without probable cause or reasonable suspicion." Ibid. (quoting Buie, 494 U.S. at 334). "Any wider search, however, must be based on 'articulable facts' and 'rational inferences' drawn from those facts that 'would warrant a reasonably prudent officer [to] believ[e] that the area

A-0996-18T1

to be swept harbors an individual posing a danger to those on the arrest scene.'" Ibid. (quoting <u>Buie</u>, 494 U.S. at 334).

Applying these legal principles to the facts found by the trial court, we hold that the protective sweep conducted by Petrosky was valid. Petrosky and Hershey were at defendant's trailer based on information provided by defendant himself and then supplemented by Willis. That information indicated that Fuller was at the trailer park and Willis provided more specific information that Fuller was at defendant's trailer. Petrosky then approached the trailer and observed Fuller through a window. He told Fuller that he was under arrest and directed him to get on the floor. Instead of complying with that order, Fuller ran out the front door where he was apprehended by Hershey on the front porch. Significantly, Willis had also informed Petrosky and Hershey that Fuller was with another man and that they should be careful. Accordingly, it was reasonable for Petrosky to believe that there was a second man in the trailer and that he was possibly armed or at least posed a danger to the detectives' safety.

The trial court found that Fuller had been apprehended just feet from the door of the trailer and the second man described by Willis could have threatened the detectives' safety if he was in the trailer because the detectives were on the front porch. The trial court also found that Petrosky's sweep of the trailer was

13

limited in scope and duration and designed to see if there was anyone else in the trailer. Specific to where the weapons were observed, the trial court found that Petrosky saw a hole while he was conducting his lawful sweep and that it was reasonable for him to look into the hole because it could have concealed an individual given that it was three to four feet wide and three feet deep. All those findings are supported by substantial credible evidence in the record. Indeed, there was no evidence to rebut or challenge those findings.

Defendant argues that the sweep was unlawful because Petrosky entered the trailer and he was not authorized to cross the threshold into that dwelling. Our Supreme Court has held that a residence can be subject to a protective sweep as long as the officers are lawfully in the residence and reasonably believe there may be a dangerous individual in the "area to be swept." See Davila, 203 N.J. at 102. The parties have not identified, and we are not aware of, any case law in New Jersey where an individual was apprehended just outside of a residence and the protective sweep included the inside of the residence. Nevertheless, we are satisfied that the protective sweep conducted by Petrosky was lawful.

The most important fact is that Fuller was apprehended just outside the trailer. Accordingly, the zone of danger to the detectives included the trailer because the door to the trailer was just several feet away from where the

A-0996-18T1

detectives were holding Fuller. Moreover, Fuller was apprehended on the porch, which was connected to the trailer and arguably part of the residence.

In summary, Petrosky and Hershey were lawfully at defendant's dwelling to effectuate a valid arrest warrant, arrested Fuller on the front porch, and conducted a valid protective sweep that included the trailer itself. Accordingly, the information contained in the application for the search warrant was lawfully obtained and the resulting warrant was valid. We therefore affirm the decision denying the motion to suppress and defendant's conviction of second-degree unlawful possession of a weapon.

B.    The Sentence on the Fourth-degree Conviction

Defendant correctly contends that his sentence of three years for his conviction of fourth-degree receiving stolen property is illegal. Indeed, the State concedes this point. The sentencing range for a fourth-degree crime is up to eighteen months. N.J.S.A. 2C:43-6(a)(4). Consequently, a sentence of three years on a fourth-degree conviction is beyond the sentencing range and is an illegal sentence. See State v. Crawford, 379 N.J. Super. 250, 259-60 (App. Div. 2005) (holding that the trial court erred by not "sentencing [the] defendant in accordance with the Code of Criminal Justice"). Consequently, we vacate defendant's sentence on his fourth-degree conviction and remand for

resentencing on that conviction, which was entered in a separate judgment of conviction.

Affirmed in part, reversed in part, and remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0996-18T1